## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Dale Stewart,
    Petitioner

vs

                    Case No. 1:03cv201
                    (Weber, S.J.; Hogan, M.J.)

Robin Knab,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner is an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio. In September 2000, he was convicted by the Butler County, Ohio, Court of Common Pleas upon entry of guilty pleas to two counts of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(9), as charged in a bill of information.[1] (*See* Doc. 5, Exs. A-B). In October 2000, petitioner was sentenced to consecutive four (4) year prison terms totaling eight (8) years. (*Id.,* Ex. D). He was re-sentenced to the same terms of imprisonment in August 2001, after an initial appeal resulted in a remand to the trial court for re-sentencing. (*Id.,* Ex. H).

In March 2003, after exhausting state court remedies, petitioner filed the instant federal habeas corpus petition with the assistance of counsel. In the petition filed pursuant to 28 U.S.C. § 2254, petitioner alleged two grounds for relief challenging his sentence, including the claim that he was denied due process when he was not given "the opportunity to read and rebut sentencing evidence relied upon by the Sentencing

---

[1]The information charged that "[o]n or about 1998," petitioner engaged in sexual conduct with two minors, then ages 14 and 15, at a time when petitioner was serving as a "coach, instructor, leader" of the minors' scouting troop. (Doc. 5, Ex. A). It appears from the transcript of the plea-taking proceeding that petitioner's counsel waived the formal reading of the statement of facts underlying the charges set forth in the information. (*Id.*, Ex. C, Tr. 14).

Court that was contained in victim impact statements." (*See* Doc. 1, ¶¶12-13).

On November 4, 2005, the Court adopted the undersigned's Report and Recommendation to deny the petition with prejudice because petitioner had not demonstrated, as required under 28 U.S.C. § 2254(d), that the state court's adjudication of his claims was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. (*See* Docs. 8, 15-16). Specifically, the Court rejected petitioner's due process claim, because in non-capital cases, the United States Supreme Court has clearly established only that the sentence cannot be based on "erroneous information," not that full disclosure of pre-sentence information is constitutionally required. (*See* Doc. 15, pp. 6-9). The Court alternatively held that "[a]ssuming, *arguendo,* that the trial court erred in this case, the court's failure to provide the victim impact statements to the defense was harmless error . . . because while the judge considered the statements, 'the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI' which petitioner had received." (*Id.,* p. 11).

The Court concluded that a certificate of appealability should issue with respect to petitioner's due process claim. (*Id.,* p. 14). In a separate order issued the same date, the Court also "reluctant[ly]" granted petitioner's unopposed motion to expand the record for appeal purposes and directed respondent to file under seal "the pre-sentence report and victim impact statements that were made part of the record before the Ohio Court of Appeals on direct appeal." (Doc. 13).

In granting petitioner's motion to expand the record "out of an abundance of caution and in the interests of a complete record," the Court pointed out that the motion was based on petitioner's "faulty interpretation of the Report and Recommendation" to the extent the Court had alternatively concluded that the failure to provide the victim impact statements to defense counsel amounted to harmless error based on the state appellate court's factual finding, presumed correct under 28 U.S.C. § 2254(e)(1), that "the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological reports and the [pre-sentence report]" provided to defense counsel. (Doc. 13, pp. 2-3). The Court reasoned in pertinent part:

In the pending motion, petitioner misinterprets the Magistrate Judge's

2

statement as indicating that the psychological reports and the pre-
sentence report, which he had access to at sentencing, contain the
information that "was concealed from him in the secret victim impact
statement." . . . In his objections to the Report and Recommendation,
petitioner similarly assumes that the Magistrate Judge asserted that the
PSI and the psychological reports duplicated the information in the
victim impact statement and on this basis, petitioner takes issue with his
findings.... Petitioner requests that this Court order respondent to expand
the record to include the pre-sentence report and the victim impact
statements purportedly to determine whether the withheld information
was otherwise revealed in the PSI and psychological reports.

*However, the Report and Recommendation did not indicate that the
information which was contained in the victim impact statements was
mirrored in the PSI or psychological reports. What it did say was that
the "facts" that the judge ultimately relied on in sentencing as reflected
in his sentencing findings were contained in the PSI and psychological
reports (documents to which petitioner did have access at sentencing),
based on the finding of fact determined by the Ohio Court of Appeals
which this court may presume to be correct.*

(*Id.*, p. 2) (emphasis added).

Apparently, the custodian of the pre-sentence report and victim impact
statements refused to comply with the Court's order granting petitioner's motion to
expand the record. The documents, therefore, were not made part of the record on
appeal.

On October 9, 2007, the United States Court of Appeals for the Sixth Circuit
reversed this Court's Order and Judgment of November 4, 2005 and remanded the
matter for additional proceedings "with further instructions that the writ should be
granted if the State fails to supplement the record as ordered by the district court
within ***forty-five (45) days*** of the date of this opinion."[2] (Doc. 21) (emphasis in
original). In so ruling, the Sixth Circuit agreed with the District Court decision to the

---

[2]The Sixth Circuit's "mandate" resulting from this disposition issued on October 31,
2007. (Doc. 23).

extent that in a non-capital case such as this, "there is no clearly established federal constitutional right to full disclosure of all information used by a trial judge in determining a defendant's sentence[,]" and therefore, "the Ohio courts did not act contrary to clearly established federal law, nor did they unreasonably apply this law, in rejecting [petitioner's] claim of a due process entitlement to disclosure of the victim impact statements used in his sentencing." (*Id.,* pp. 2, 4-8).

However, the Sixth Circuit found that there was "some support" in the record for petitioner's "more narrow" claim, which does implicate due process concerns recognized by the Supreme Court, that "the state trial court's sentencing decision was impermissibly influenced by materially false or misleading information contained in the victim impact statements that were withheld from [petitioner] and his counsel." (*Id.,* p. 8).

The Sixth Circuit specifically referred to two examples in the record of the trial court's possible reliance on "false or misleading information," which petitioner had asserted "could only have come from the victim impact statements:" (1) "the trial court's reference at sentencing to four victims, whereas only two victims were mentioned in the bill of information filed by the prosecutor and at the subsequent hearing at which [petitioner] entered his guilty plea;" and (2) "the trial judge[']s statements at sentencing indicating that [petitioner's] criminal activity spanned perhaps as much as a five-year period, but the bill of information stated only that [petitioner's] offenses occurred '[o]n or about 1998.'" (*Id.*).

The court continued in pertinent part:

If the victim impact statements were indeed the source of this information, and if this information were deemed materially false, then [petitioner] seemingly could establish a violation of the due process right. . . . It is clear from the record that the trial judge specifically considered the victim impact statements in sentencing [petitioner]. Moreover, false information about additional victims and additional time periods during which [petitioner] engaged in criminal activity certainly would appear to be "material," particularly where the trial judge repeatedly referred to this information in determining [petitioner's] sentence. . . .

. . . .While [petitioner] posits that the sentencing court's determinations

4

regarding the number of victims and the time span of his criminal activity must have been based upon false information contained in the victim impact statements, the only way to test this assertion is to review the victim impact statements themselves. By the same token, we have no way to confirm the State's contrary assertion in its appellate brief that all of the "facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI which the defense had received," where *neither* the victim impact statements *nor* the psychological evaluations and the PSI are part of the record on appeal. Under these circumstances, we cannot say whether the victim impact statements necessarily were the source of any materially false information relied upon by the sentencing court, or whether any such information instead could have been gleaned from sources that [petitioner] and his counsel had an opportunity to review and challenge at sentencing.

(*Id.,* p. 9) (emphasis in original).

The court reasoned further:

. . . . Because the federal court record does not contain *any* of the pertinent materials reviewed by the Ohio Court of Appeals in making its findings – *i.e.,* the victim impact statements, the psychological evaluations, and the PSI – neither we nor the court below can possibly determine whether the state court's findings were "unreasonable" in light of a missing evidentiary record. Instead, we are left with only the parties' competing assertions that the trial court's sentencing determination was or was not based in part on information that was uniquely culled from the victim impact statements.

\*\*\*\*

It is difficult to see, under the present record, how a court could declare with any degree of confidence that any due process violation was harmless. As noted, the record *does* indicate with sufficient clarity that the state trial court considered the victim impact statements in determining [petitioner's] sentence. What it does *not* reveal, however, is whether the Ohio Court of Appeals was correct in concluding – and,

5

in turn, whether the district court properly accepted as the factual predicate for its determination of harmless error – that "the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI."... As explained, the reasonableness of this finding is beyond the power of this court to ascertain, where the evidence upon which it rests is missing from the federal court record. If, in fact, any information that the sentencing court culled from the victim impact statements could also be found in other materials that *were* disclosed to [petitioner] and his counsel, then it could properly be said that [petitioner's] lack of access to the victim impact statements was harmless, where the availability of other, comparable materials ensured his opportunity to challenge any materially false information upon which the trial court might have relied in determining his sentence. Unfortunately, this factual question is unanswerable under the present record.

(*Id.,* pp. 10-11) (emphasis in original).

The Sixth Circuit concluded that in light of the record evidence supporting the "more narrow" due process claim, a remand was "necessary *both* to determine whether a due process violation occurred *and* to consider whether any such error was harmless" under *Brecht v. Abrahamson,* 507 U.S. 619 (1993). (*Id.,* p. 12) (emphasis in original). Recognizing that petitioner could not "fairly be expected to establish the necessary elements of his [due process] claim" absent supplementation of the record as previously ordered by the District Court on November 4, 2005, the Sixth Circuit further ordered the State to comply with that prior order within 45 days in order to prevent the granting of the habeas corpus writ to petitioner by default. (*Id.,* pp. 12-13).

The state trial judge, the Honorable Keith M. Spaeth, complied with the Sixth Circuit's order for further supplementation of the record within the requisite time frame to the extent he provided this Court with the pre-sentence investigation report (PSI) and victim impact statements submitted before petitioner's initial sentencing hearing in October 2000. (*See* Docs. 24, 27).[3] On November 13, 2007, respondent's

---

[3]The psychological evaluations had already been filed under seal in this case as Doc. 14.

6

motion to seal these records for *in camera* inspection (Doc. 24) was granted,[4] and the matter was recommitted to the undersigned Magistrate Judge for Report and Recommendation in accordance with the Sixth Circuit's mandate. (Doc. 26).

Upon initial *in camera* review of the documents filed under seal, as well as the transcript of the petitioner's re-sentencing hearing, the undersigned was concerned that the "record filed under seal may not be complete," because it appeared an additional victim impact statement was submitted to the trial court before the re-sentencing hearing on August 16, 2001. (*See* Doc. 30, p. 2). Therefore, on January 15, 2008, an Order was issued directing the Butler County Common Pleas Court and respondent to provide "any victim impact statement . . . not yet produced to this Court, which was filed in the state trial proceeding after petitioner's original sentencing hearing in October 2000, but before his re-sentencing in August 2001." (Doc. 30).

In response to the January 15, 2008 Order, respondent submitted for manual filing an additional victim impact statement dated August 14, 2001, which apparently had been inadvertently omitted from respondent's prior submissions. (Doc. 38). By Order issued February 8, 2008, the additional victim impact statement was filed under seal for *in camera* inspection to be "returned to the attention of the Honorable Keith M. Spaeth of the Butler County Comm Pleas Court 'along with records previously filed under seal . . . after disposition and conclusion of appellate review of this case.'" (*See* Docs. 37, 42).

Respondent also filed a motion to supplement the record "with a recording of the August 16, 2001 sentence hearing and the Certificate of Trial Judge Keith M. Spaeth;" in the certificate attached to the motion, Judge Spaeth avers:

> I was the sentencing judge in the case of *State v. Stewart,* Case No. CR00-08-1090, in the Butler County Court of Common Pleas. I recently reviewed the transcript of the sentencing hearing held on August 16, 2001, in that case. According to the transcript, p. 48, in discussing the harm inflicted by the defendant on the victims and their families, the transcript reflects that the Court stated "four innocent kids." I actually said "poor" innocent, not "four" innocent kids. On January 16, 2008, I

---

[4]In the November 13, 2007 Order, the District Court also granted respondent's request to return the documents filed under seal to the Butler County Common Pleas Court "[u]pon disposition of the above styled case, and the conclusion any appellate proceeding." (Doc. 26).

listened to a recording of the sentencing hearing.  The recording indicates that I said "poor" innocent kids rather than "four" innocent kids.

At the time of sentencing and resentencing, I did not believe there were four victims in the case.  I knew there were two victims and sentenced the defendant accordingly.

*(See* Doc. 32).

Respondent's motion to supplement the record was granted on February 8, 2008 *(see* Doc. 42),[5] and respondent was permitted to manually file two CD audio recordings of the August 16, 2001 re-sentencing hearing under seal. *(See* Docs. 33, 34, 39).

It appears from the record, which also includes petitioner's "Brief On Remand From The Court Of Appeals" *(see* Doc. 28), that the matter is now ripe for final adjudication in accordance with the Sixth Circuit's remand order and mandate *(see* Docs. 21-23).

## Factual Background

The facts giving rise to the criminal charges against petitioner were summarized by the Ohio Court of Appeals, Twelfth Appellate District, on direct appeal from the trial court's decision to reimpose the eight-year prison sentence at petitioner's re-sentencing hearing.  These facts are not contested by petitioner, and are presumed correct under 28 U.S.C. § 2254(e)(1):[6]

---

[5]In that Order, the Court also denied petitioner's motion to strike the "new evidence" submitted by respondent in the motion to supplement the record. *(See* Docs. 40, 42).

[6]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

. . . .The charges stemmed from a continuing course of conduct that lasted at least three years during which appellant allegedly engaged in sexual contact with two teenage boys (ages 14 and 15), which included oral sex and masturbation. At the time of the offenses, appellant, a former law enforcement officer, was a civilian employee with the Butler County Sheriff's Department and an assistant advisor with the Eagle Scout's Explorers Post program. The two victims were participants in the Eagle Scout program.

(Doc. 5, Ex. M, p. 2).

## A. October 12, 2000 Sentencing

When petitioner was initially sentenced on October 12, 2000, a sexual predator determination was first made based on two psychological evaluation reports that had been submitted, as well as the PSI.[7] The judge found that petitioner was a sexually oriented offender, and proceeded to sentencing. (Doc. 5, Ex. F, Tr. 4-5).

At one point during the sentencing portion of the hearing, the following discussion took place when the trial judge remarked on an earlier comment made by defense counsel suggesting that petitioner's offenses should be viewed as only "one day" in his otherwise exemplary life (*see id.,* Tr. 7):

COURT: You indicated that we shouldn't judge the defendant's conduct by what he did on one day. This didn't occur just on one day.

DEFENSE COUNSEL: Your Honor, from my understanding – I read the PSI and that was something the Court could consider. We're here on two counts and the client has indicated that this was a situation that occurred on [sic] a short period of time. If you want to say literally one day I will not – I can't possibly – not having been there – none of us having been there – I couldn't possibly say that was just one day. When I said that I guess I mean figuratively . . . one day in his life. I'm saying

---

[7]As noted *supra* p. 6 n.3, the two psychological evaluation reports are filed under seal in this case as Doc. 14.

look at the other days in his life and what he's accomplished and what he's done. That's what I'm saying. I apologize –

COURT: Very well. I just wanted to make certain that I understood....

*(Id.,* Tr. 8-9).

After hearing various lay witnesses called by the defense to testify on petitioner's behalf, the trial judge gave the following statement supporting his decision to impose consecutive, non-minimum terms of imprisonment totaling eight (8) years:

> ....[The Court] has taken into consideration the information contained in the [PSI] . . . [a]s well as [a psychological evaluation] report . . . which was . . . previously admitted in relation to the Sexual Predator hearing and pursuant to the request of defense counsel the Court will consider that in the Sentencing Hearing.

> The Court has taken into consideration all the letters that have been presented [on petitioner's behalf], the statements made here in open Court [again on petitioner's behalf], as well as the Victim Impact Statements.

> It has considered the likely and unlikely recidivism factors as well as the seriousness factors. In terms of the seriousness factors the Court can't imagine a more – a much more serious offense. The defendant was in a position of trust. He held a position of trust. He made contact with the victims through that position of trust and he abused and violated that position of trust to perpetuate and perpetrate these crimes.

> . . . .The victims in this case were minors. And he used his, as I indicated, his position, his profession to perpetuate these crimes and his relationship with the victims. He befriended these victims over time. And based upon my review of the facts, planned and schemed and plotted these crimes over a period of time. It was not a one day lapse in judg[]ment based on this Court's review of the facts, but something that was at least planned and set up over a period of time.

> The Court will find the seriousness factors to be extremely high and will

find none of the less serious factors apply. In terms of recidivism, the Court has already found that he is not a Sexual Predator. He has no prior record. He has been a law abiding, exemplary citizen. He's not a Sexual Predator but will find that the recidivism factors would indicate that he is unlikely to recidivate.

The Court will find specifically that without question this is a crime involving a sex offense. Will find that the defendant is not amenable to community controlled sanctions due to the factors that this Court has already discussed.

(*Id.*, Tr. 12-14).

The trial judge, at that point, imposed a sentence of four (4) years for each offense and went on to find that consecutive sentences were necessary, reasoning as follows:

And the Court appreciates everything that's been presented by Mr. Stewart, Mr. Stewart's family and friends, his attorneys and is without question Mr. Stewart, that outside of your involvement with these victims, you have led an exemplary life and you are to be commended. But this Court has the difficult position of not only taking that into consideration but considering other factors. The need for punishment, the need for deterrence, the need for the victims to have a sense that ... you've been adequately punished.

And the Court therefore will find that consecutive terms are necessary and appropriate to protect the public and adequately punish the defendant and are not disproportionate to his conduct or the danger that he poses. Furthermore, will find that the harm is so great or unusual in this case that a single term does not adequately reflect the seriousness of the defendant's conduct. In this case, based upon the Court's review of the facts and the Court's review of the [PSI] already indicated and it will go to the Court's reasoning and requirements that consecutive sentences are necessary, as well as the sentence as a whole.

The defendant, upon review of the [PSI], placed himself in this position of trust working with minor children. He placed himself in positions

11

where he would be alone with these children at times when these offenses could be perpetuated through a course of conduct and conversation began to discuss these matters and from what I can tell from reading this [PSI], laid the groundwork for the perpetuation of these offenses far in advance – weeks in advance. . . .

(*Id.*, Tr. 14-15).

Thereafter, on direct appeal, the Ohio Court of Appeals vacated the trial court's sentencing determination and remanded the matter for re-sentencing. The state appellate court determined that a remand was necessary because the trial judge had failed to make requisite findings on the record, as listed in Ohio's sentencing statute, for imposing a sentence greater than the minimum sentence given that petitioner had not previously served a prison term. (*See id.*, Brief, p. 2 & Exs. G & I, Tr. 14).

### B. August 16, 2001 Sentencing

The second sentencing hearing was held before the same judge on August 16, 2001, nearly a year after petitioner was convicted and initially sentenced to the aggregate eight-year prison term.

Apparently, prior to the hearing, petitioner's counsel had issued a subpoena to the Chief Probation Officer, requesting that the defense be provided with a copy of the victim impact statements and PSIs for "the last five sexual battery cases done by your office." (*Id.*, Ex. I, Tr. 4). In response, the State filed a motion to quash on the ground that the requested documents contained protected confidential information. The State's attorney also stated with respect to the victim impact statements that the victims had expressed a "strong fear" of petitioner and concern about retaliation if petitioner were to see what they had said directly to the judge about the offenses. (*Id.*, Tr. 9-10).

The trial court granted the State's motion to quash. (*Id.*, Tr. 12). The court refused to grant the request for five PSIs from unrelated cases. The court further reasoned in denying petitioner's request for the victim impact statements:

Normally, as a matter of course, this court will be happy and free to share with the defendant and his counsel the - victim impact statement. I've reviewed, again, this morning the victim impact statements. The

victim[s'] names are sprinkled and spread throughout these victim impact statements. The most recent victim impact statement that I have . . . indicates to this court, once again, the severe emotional trauma and impact that this case has had on these defendants [sic]. The prosecutor has indicated that in this - it's been brought to the court's attention by the victims that they are in fear of reprisals by the defendant. And this court is not inclined to risk any more harm coming to these defendants [sic] or their families by the release of the victim impact statements.

(*Id.*).

Petitioner's counsel objected to the trial court's ruling as constituting a statutory and constitutional violation. (*Id.,* Tr. 13). In response, the court noted for the record that (1) "the victim impact statements do not state anything improper;" (2) "the Court, if they so contained, would not place any weight or consider any improper reference being made in these victim impact statements;" and (3) "it's hard to envision the defendant could ever say or do anything – that would somehow attack or minimize what he had done to these victims by virtue of the offenses that he has been found guilty of. And even if the defendant saw and read these victim impact statements, the only thing I guess he would say is, well, I guess [I] really didn't cause all these emotional scars by the years of abuse that I imposed upon these kids." (*Id.,* Tr. 13-14). The court continued:

Whatever value that . . . the defendant's right to see these, or his alleged right to see these victim impact statements may have, it's far outweighed by the risk of releasing[;] furthermore, . . . it's not been demonstrated to this court, and the court cannot envision[,] any legitimate and helpful use – and helpful to the defendant – use of these victim impact statements.

(*Id.,* Tr. 14).

As was done at the first sentencing hearing, petitioner's counsel next called various witnesses to testify as lay witnesses on petitioner's behalf for purposes of mitigation of sentence. The trial judge questioned a few of these witnesses, asking on one occasion: "Sir, you're aware over the last five years part of the service in the community he was, roughly five years, at least from the time he was arrested. That much of that time was spent plotting and planning – engagements and encounters with young scouts?" (*Id.,* Tr. 26). When the witness responded, "Well, I believe that's

13

what's been presented," the colloquy continued as follows:

> COURT: And he pled guilty to it. But I mean, I didn't know whether you'd been made aware of - of what the - true allegations are in this case that he's pled guilty to?
>
> A. Yes I do.
>
> COURT: And I don't know whether that affects your opinion – considering, obviously, the impact on . . . the victim[]s and their . . . families? Does that – I don't – I didn't know how much information you'd been made aware of?
>
> A. . . . I have pretty much all the information.

(*Id.*, Tr. 26-27).

After hearing the lay witnesses' testimony and counsels' arguments, the trial judge made the following statement:

> The Court will consider everything it has and was presented for purposes of sentencing by the defendant. Pre-sentence investigation report. . . . And the testimony that was provided today. The victim impact statements that have been presented. . . .
>
> In terms of seriousness factors. The court, as I stated the last time, cannot envision a much more serious, calculated, scheme by the defendant to over a four or five year period, *or whether it's two or three*, and it's an extended period of time, to place [him]self in a position of trust with these children. To violate his position as an Explorer Scout, as a . . . Special Deputy. A man who wears a gun, who represents the law, to then place himself in position with these children, and manipulate these children, and their parents to a point where he - for his own sexual gratification, on repeated occasions over and over - overnight stays at his house, in which one or more of the children believe that a bunch of Explorer[]s were staying at Mr. Stewart's house, instead it's just Mr. Stewart - engaging sexual – explicit, and graphic, sexual contact with these children on a repeated basis.

Out of respect for the victims, I don't want to go into more detail, but I think it's very important that this court – for purposes of this hearing, and for the people who have spoken on your behalf, to realize the seriousness of your conduct. And it wasn't just one time, or for a short period [of] indiscretion, as I described previously and as I – as I remember talking about at the last hearing. This is something that was calculated, it was designed, it just didn't happen. And it continued to happen over, over, over again. *Not one year. Not two years. At least three – and maybe more.*

And so while I understand that all these people know what – the good things you've done, and I told you the last time, this is not about the good things you have done in life. Yes, . . . that's something this court can consider. This is about what you did, in this case, to these children, over, and over, and over again. And the impact you have on these children and their families, and the scarring that you have done to their development, that's what this is about. . . .

So – specifically in terms of recidivism factors, the court will find the defendant - does not have a prior record, has led a prior law-abiding life, he shows significant remorse having been incarcerated for a significant period of time - today -

In terms of seriousness factors, again, . . . the court will find that . . . the victims in this case suffered . . . serious physical, psychological, and economic harm as a result of these offenses, and continue to this day ... as they hear the minimization of the defendant's acts upon these children. And as they're minimized today, by the defendant.

Further, the defendant used and held a . . . position of trust. And that position of trust was used to perpetrate the offense – when he was the advisor of the Explorer's Groups, part of the Scouts. He used his professional reputation, or occupation, or office to . . . facilitate the offenses. Again, due to his position as an Explorer Group. And the fact that these kids were under his supervision and control. In one of these scenarios the defendant goes so far as to bring a tent to a camp. Whereas he sets this camp – this tent outside of the regular barracks for the kids – to stay in, and invites the victims to this tent, while at camp. And,

15

again, of course, the defendant's relationship with the victims was used to facilitate the offense. To make the victims['] parents feel at ease in allowing the victims to be with the defendant, to stay at his house, to ride in his car. And I can only imagine the pain and suffering, not only by these children, but by their parents wondering what if, what could we have done, what should we have seen? As they watched their kids try to deal with the things that you've left them with.

\*\*\*\*

. . . .[F]or the reasons stated herein, repeatedly stated herein, at this point, the court will find that to impose the minimum sentence will demean the seriousness of the offense and not adequately protect the public. . . . [T]o give this defendant the minimum term, which would be one year in prison, would demean the seriousness of the defendant's conduct, and not adequately protect other children who might be exposed and who the defendant would manipulate his life, and those children's li[ves], to expose himself to those children, and force himself upon those children.

(*Id.,* Tr. 41-46) (emphasis added).

Judge Spaeth's purported reference to "four," as opposed to two, victims occurred later in the hearing, right before petitioner's sentence was pronounced. As transcribed by the court reporter, Judge Spaeth stated:

To err on the side of caution. We'll once again illuminate that the reason that consecutive sentences are necessary is because for a repeated number of years this defendant engaged in serious - sexual contact, gratification with these children[;] it was not[] mere touching, and it was to the point - of sexual gratification. Of repeated contacts with these children over a repeated number of years, using his position as an Eagle Scout, by using his position through his employment, using his position - possibly, at least as to those two positions, and as an - in particular as an Eagle Scout - Leader- to have access to these children. Place these children in his house, in his car, in his tent, again, so that he could perpetrate these crimes on these - *on these four innocent kids and their families.* And those, sir, are the reasons for imposing more than the minimum term of one year.

16

(*Id.*, Tr. 47-48) (emphasis added).

However, upon review of the audio recording of this portion of the sentencing hearing submitted under seal by respondent (Doc. 39), the undersigned finds that as Judge Spaeth has averred, the judge did not refer to "four innocent kids" as the court reporter had transcribed, but rather "actually said 'poor' innocent kids." (*See* Doc. 32, Certificate of Trial Judge).

## OPINION

As an initial matter, this case was remanded by the Sixth Circuit for the determination of narrow issues that were not presented by petitioner to the Ohio Court of Appeals on direct appeal from the trial court's August 16, 2001 re-sentencing decision. (*See* Doc. 5, Ex. K). Therefore, the Ohio Court of Appeals did not address the specific questions currently before this Court for adjudication, which are: (1) whether a due process violation occurred based on allegations that the trial judge was "impermissibly influenced by materially false or misleading information" contained in the non-disclosed victim impact statements; and (2) whether any such error was harmless. Instead, the state court of appeals only considered the more general claim raised by petitioner on direct appeal–i.e., that he was entitled to see the victim impact statements because they contained "secret" information relied on by the sentencing court which he otherwise was unable to contest. (*See id.*, pp. 4-6 & Ex. M). At this juncture, however, that general question, which was presented to and addressed by the Ohio Court of Appeals, has been decided against petitioner by both the federal district court and the Sixth Circuit.

As the Sixth Circuit pointed out in its remand decision, it is well-settled under Supreme Court precedent that "the Due Process Clause of the Fourteenth Amendment is violated when a defendant is sentenced on the basis of materially false information." (Doc. 21, p. 8) (citing *Townsend v. Burke,* 334 U.S. 736, 741 (1948), and *United States v. Tucker,* 404 U.S. 443, 447 (1972)). The Sixth Circuit found that petitioner had made a "threshold showing" of the need for further inquiry as to whether the sentencing court may have relied on "false" or "misleading" information in sentencing petitioner, based on certain comments made by the trial judge at the August 16, 2001 hearing reflecting his possible misunderstanding of the time span of petitioner's

criminal activity and the number of victims involved. (*Id.,* pp. 8, 10).[8]

The record now contains all "pertinent materials reviewed by the Ohio Court of Appeals in making its findings [in rejecting petitioner's more general due process claim raised on direct appeal] – *i.e.,* the victim impact statements, the psychological evaluations, and the PSI" (*see* Doc. 21, p. 10), as well as the audio recording of the final sentencing hearing held on August 16, 2001 and the "Certificate of Trial Judge Keith M. Spaeth" regarding his understanding of the number of victims involved in the case when re-sentencing petitioner to the aggregate eight-year prison term. The undersigned has thoroughly reviewed all of these materials and finds that the non-disclosed victim impact statements do not contain any false or misleading information pertaining to the time span of petitioner's criminal activity, the number of victims involved, or any other factual matter which may have factored into the judge's decision to sentence petitioner to non-minimum consecutive prison terms.

The victim impact statements, which were derived solely from the victims or members of their families, accurately reflected that only two victims were involved and made no mention of the length of time petitioner knew the victims or had been engaged in criminal behavior with respect to them. Indeed, the non-disclosed statements contained few, if any, references to the specific facts surrounding the criminal charges against petitioner, and the few facts that were alluded to also could be found in the PSI and psychological evaluations that were accessible to the defense at sentencing.

As the trial judge pointed out when granting the State's motion to quash at the August 16, 2001 hearing, the victim impact statements were considered for sentencing purposes primarily because they shed light on the degree of emotional harm suffered by the victims and their families. (*See* Doc. 5, Ex. I, Tr. 12-14). However, as noted above, *see supra* p. 18 n.8, the Sixth Circuit expressly rejected the contention that *Townsend*'s due process protection extends to the sentencing court's determination regarding the seriousness of the harm suffered by the victims, which appears to "rest largely upon statements of belief rather than fact." (Doc. 21, p. 9 n.2).

---

[8] In so ruling, the Sixth Circuit rejected in a footnote petitioner's additional assertions that *Townsend*'s due process protection extends to the sentencing court's determination regarding (1) the seriousness of the harm suffered by the victims, which appears to "rest largely upon statements of belief rather than fact;" and (2) the likelihood of recidivism, which involves a prediction rather than an assertion of fact. (Doc. 21, p. 9 n.2).

Finally, petitioner's "threshold showing" of the trial court's "possible reliance on false or misleading information" is unable to withstand a close scrutiny of the record, as now supplemented. First, as discussed above, the audio recording of the August 16, 2001 sentencing hearing reveals that the court reporter made an error in transcription in that the trial judge never made any statement referring to the victims as "*four* innocent kids;" rather, the judge referred to the victims as "*poor* innocent kids and their families." Moreover, Judge Spaeth has expressly averred that "[a]t the time of sentencing and resentencing, [he] did not believe there were four victims in the case," but rather knew only two victims were involved "and sentenced the defendant accordingly." (Doc. 32, Certificate of Trial Judge).

The only other evidence in the record giving rise to the Sixth Circuit's concern that the trial court may have relied on false and misleading information at sentencing pertained to the time span of petitioner's criminal activities. However, all information on that issue was set forth in the PSI and psychological evaluations which, unlike the victim impact statements, were disclosed to the defense at the time of sentencing.

According to these materials, which petitioner never has disputed, petitioner met and became involved with the two victims when serving as an assistant advisor to their scouting group as early as a few years before the 1998 offenses charged in the bill of information. As the trial judge stated at the initial sentencing hearing and reiterated on re-sentencing, and indeed as defense counsel conceded at the initial sentencing hearing, petitioner's conduct did not "occur on just one day;" rather, petitioner "befriended the[] victims over a period of time" and "planned and schemed and plotted these crimes over a period of time." (Doc. 5, Ex. F, Tr. 8-9, 12-14; *see also* Ex. I, Tr. 42-43).

At the re-sentencing hearing on August 16, 2001, the trial judge mentioned at one point that petitioner had engaged in a course of conduct "over a four or five year period." (*Id.,* Ex. I, Tr. 26, 42). There is evidence in the PSI to support this calculation to the extent that the trial judge may have considered the time frame to span from 1995, when one of the victims first met petitioner, to August 2000, when the criminal charges were finally brought against petitioner. In any event, even assuming, *arguendo,* that this calculation was over-inclusive and did not accurately reflect the time frame in which petitioner actually engaged in criminal activity, it is clear upon review of the entire sentencing hearing transcript, that the trial court did not rely on that specific calculation in determining petitioner's sentence. Indeed, the trial judge recognized that his statement of an "over a four or five year" course of

conduct may have been over-inclusive, as he immediately followed that statement with the caveat, "or whether it's two or three, . . . it's an extended period of time." (*Id.,* Tr. 42). Later, the judge mentioned only that petitioner's engagement in criminal activities occurred over "at least three [years] – and maybe more." (*Id.,* Tr. 43). The information contained in the PSI supports this determination, and petitioner has never contested it.

Accordingly, in sum, upon review of the entire record as supplemented after the matter was remanded by the Sixth Circuit for additional proceedings, the undersigned concludes that petitioner has not demonstrated he is entitled to habeas corpus relief based on the sole remanded claim that he was denied due process because the trial court relied on materially false or misleading information contained in non-disclosed victim impact statements when re-sentencing petitioner on August 16, 2001.

In accordance with the Sixth Circuit's remand order, the undersigned has conducted an *in camera* inspection of all victim impact statements submitted to the trial court prior to sentencing petitioner in August 2001, the PSI and psychological evaluations that were accessible to the defense at sentencing, and the audio recording of the August 16, 2001 sentencing hearing. Upon review of these items, as well as the "Certificate of Trial Judge Keith M. Spaeth," the Court finds that the victim impact statements do not contain any false or misleading information, and that the trial judge did not rely on any non-disclosed false or misleading information in determining petitioner's sentence; therefore, no due process violation occurred as a result of the trial court's refusal to provide the victim impact statements to the defense. In any event, the record as supplemented supports this Court's determination in its prior Order denying federal habeas relief that any error by the trial judge in refusing to disclose the victim impact statements was harmless under *Brecht* because, as the state appellate court had found on direct appeal, "'the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI' which petitioner had received." (*See* Doc. 15, p. 11).

## IT IS THEREFORE RECOMMENDED THAT:

1. The "more narrow" due process claim remanded by the Sixth Circuit for additional proceedings, which stems from a general claim alleged in the instant petition that has been rejected on the merits by both this Court and the Sixth Circuit "of a due process entitlement to disclosure of the victim impact statements used in

[petitioner's] sentencing"(*see* Docs. 1, 15, 21), be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the sole narrow claim remanded by the Sixth Circuit because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether the claim should have been resolved in a different manner or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal of any Order adopting this Supplemental Report and Recommendation would not be taken in "good faith," and, therefore, **DENY** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 2/28/08

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\03-201rmd6thCir.denypet.sentencing-withheldinfo.wpd

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Dale Stewart,
    Petitioner

    vs                       Case No. 1:03cv201
                                 (Weber, S.J.; Hogan, M.J.)

Robin Knab
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).